**STATE, Plaintiff-Appellee, v. KOONS, Defendant-Appellant.**

Ohio Appeals, Second District, Clark County.

No. 464. · Decided December 31, 1946.

Glenn E. Detling, Prosecuting Attorney, and Robert S. Olinger, Asst. Prosecuting Attorney, Springfield, for Plaintiff-Appellee.

George A. Schwer, Springfield, for Defendant-Appellant.

## OPINION

By WISEMAN, J.:

This is an appeal on law from the judgment of the Common Pleas Court of Clark County, Ohio.

The defendant was indicted for murder in the first degree under the provision of §12400 GC of Ohio. To this indictment the defendant entered a plea of "not guilty by reason of insanity." Upon motion of the defendant, he was committed to the Lima State Hospital for observation. After observation for a period of one month the defendant was returned for trial. The defendant waived his right to a trial by jury and consented to be tried by a Court of three judges and was, by that Court, found guilty as charged. A motion for a new trial was overruled and the Court entered judgment and sentenced the defendant in conformity to law.

In his assignments of error the defendant claims:

1. That the Court erred in failing to set aside the verdict and grant defendant-appellant a new trial.

2. That the verdict is not sustained by sufficient evidence and is contrary to law.

The record is entirely devoid of evidence in support of the defense of insanity. All the expert medical witnesses testified that the defendant was at all times sane. Thus, the defense of insanity fails.

Under the assignments of error, which are based on the weight of the evidence, it is contended that the state failed to prove beyond a reasonable doubt that the homicide was committed purposely and with deliberate and premeditated malice, and that the defendant did not possess the self-control and freedom of will to avoid a wrong. The point is made that the defendant was neither feeble-minded nor insane, but was classified as a constitutional psychopathic inferior or psychopathic personality, and that his act was compelled by an irresistible insane impulse for which he should not be held accountable. It is urged that this type of person acts without deliberation or premeditation and that the defendant was incapable of committing the homicide with deliberate and premeditated malice. It is contended that the state failed to prove these essential elements of murder in the first degree.

The state called as an expert medical witness, Dr. R. E. Bushong, Superintendent of Lima State Hospital, who had observed the defendant for a period of thirty days. He testified that the defendant was sane; that although the defendant possessed certain psychopathic traits, he was not a full-fledged psychopathic personality, and was capable of commiting deliberate and premeditated murder. One expert medical witness called by the defendant testified: "I think this boy is perfectly capable of premeditation." Later in his testimony this witness stated: "I think he is capable of premeditation, but I doubt if he weighs the consequences when he commits an act." Another expert witness called by the defense, in an answer to a hypothetical question, testified that the defendant would not have committed the act with premeditation and malice.

The defendant, at the time the crime was committed, was twenty-two years of age; his father died when he was quite young after which he was supported by his widowed mother; in early youth he became a juvenile delinquent; he was guilty of thievery, sometimes from his mother and wife; he was considered a pathological liar and was unable to hold a job; his wife divorced him soon after their marriage; he begged money from his mother who at times refused to give him money. There is ample evidence to support the claim of the state that his mother was religiously inclined and had in her possession money belonging to the church; that on the day in question she had drawn her weekly earnings; that the defendant knew she received her weekly earnings on Friday and that she had in her possession money belonging to the church but did not know where said earnings and money were kept; that for some time prior to the day of the murder the defendant had been unemployed and was living with his mother; that on Friday

evening of the murder the defendant visited his aunt and uncle, returning to his home about eleven o'clock; that he was required to awaken his mother to gain admittance; that upon entering the home an argument occurred between him and his mother; that his mother retired to her bedroom and was asleep when the defendant, after getting ready for bed, took a hatchet from a place in the kitchen, walked into his mother's bedroom and while she lay asleep, he struck her several times over the head, inflicting a mortal wound; that he took his mother's purse from under her pillow; that he went to the kitchen and took the money from the purse which amounted to thirty-six dollars, and then dressed; that he left the house and hitch-hiked to Dayton where he spent most of the next two days drinking and gambling with strangers; that while in Dayton he purchased a shirt, making a change of shirts in the bus station, and placed the dirty shirt which contained blood spots in a locker at the bus station; that on the second day he returned to Springfield and was persuaded to go to Police Headquarters; that at first he denied committing the crime; that on the second day of his incarceration he signed a written confession which was introduced into the evidence.

The defendant testified in his own defense. The three judges sitting in the place of a jury as triers of the facts were in a position to judge as to the defendant's credibility, his general intelligence, his comprehension and appreciation or lack of comprehension and appreciation of any matter tending toward his guilt or innocence, and whether he had sufficient mental capacity and the processes of his mind so functioned that he would be able to plan and execute a murderous act with deliberate and premeditated malice. The one expert witness called by the defendant who gave as his opinion from a hypothetical state of facts that the defendant would not have killed his mother with deliberate and premeditated malice, testified that if the hatchet had not been used by the mother in the course of the argument, the defendant's act in taking the hatchet from the kitchen showed "earmarks of design." His aunt with whom he visited on the evening of the murder testified that the defendant stated to her that same evening or evening before that "he would commit murder if he could find somebody had a little bit of money."

The evidence clearly shows and the defendant admits that he committed a murderous act. Does the evidence show that the defendant committed murder with deliberate and premeditated malice? These elements in the crime of murder in the first degree are not always susceptible of direct proof and may be shown by circumstantial evidence. The deliberation or premeditation need not continue over a long period of time

—a short time is sufficient. That the homicide was committed with deliberate and premeditated malice may be presumed or inferred from the facts proved, if the inference drawn is more reasonable than any other. Whether the state has proven beyond a reasonable doubt these elements of murder in the first degree must be determined in the light of the factual situation developed. After a careful consideration of the entire record, we are of the opinion that the triers of the facts had before them ample evidence from which they were justified in finding that the defendant committed murder with deliberate and premeditated malice. The defendant may not have fully appreciated or comprehended the consequences of his felonious act, nevertheless, under the law of Ohio, the fact that he did not fully appreciate or measure the consequences of his act does not relieve him of the legal responsibility for his crime. There is sufficient evidence to support the judgment of the Court finding the defendant guilty as charged in the indictment.

Finding no error in the record, the judgment is affirmed.

HORNBECK, PJ, and MILLER, J, concur.