**STATE, Plaintiff-Appellee, v. McGHEE, Defendant-Appellant.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3320.   Decided November 7, 1949.

William A. Ambrose, Pros. Atty., Youngstown, for plaintiff-appellee.

Clyde W. Osborne, Youngstown, for defendant-appellant.

## OPINION

By PHILLIPS, PJ.

The parties to the case we review will be referred to in this opinion as they stood in the court of common pleas, the State of Ohio as the State, and appellant McGhee as defendant.

Defendant was indicted by the grand jury of Mahoning County upon the following indictment laid under §12400 GC:—

"Indictment for Second Degree Murder
(Felony)
"The State of Ohio, Mahoning County, SS.

"In the Court of Common Pleas, Mahoning County, Ohio, of the term of January in the year of our Lord one thousand nine hundred and forty-nine.

"The Jurors of the Grand Jury of the County of Mahoning, and State of Ohio, then and there duly empanelled, sworn and charged to inquire of and present all offenses whatever committed within the limits of said County, on their said oaths, in the name and by the authority of the State of Ohio, do find and present:

"That John E. McGhee late of said County, on the 8th day of January in the year of our Lord one thousand nine hundred and forty-nine, at the County of Mahoning aforesaid unlawfully, purposely and maliciously killed Ruth L. McGhee, contrary to the statute in such cases made and provided and against the peace of the State of Ohio."

A jury in the court of common pleas found defendant guilty as charged in the indictment, and acting under §12403 GC, the trial judge sentenced him to be imprisoned and confined in the Penitentiary at Columbus, Ohio, during life. Defendant appealed from that judgment of conviction and imprisonment to us on questions of law.

Defendant, aged 34 years, born in and, except as noted herein, a life long resident and citizen of Roanoke, Virginia, married Ruth Lottier on July 16, 1946, where, after their marriage, they lived until January 6, 1948, when they moved to Youngstown, where defendant worked and attended night school to improve himself; and he and his wife lived in a room in the home of his wife's mother.

Defendant and his wife had the usual quarrels of a young married couple incident to the adjustments of living together as husband and wife; and, as he admitted, as the result of his service in the armed forces of the United States, he had occasional fits of temper.

Defendant left his employment about 3:00 P. M. on Saturday January 8, 1949, and met his wife in downstown Youngstown. They were friendly, and proceeded to their home, where they ate their evening meal, in the preparation of which he assisted her. Later in the evening they quarreled over his wife's relations, after which she left their home to attend a woman's club, to which she belonged. While quarreling she told him to "go to hell," as the result of which he testified "so I went to see what the score was, to see where she was going, to find out about the change she was supposed to leave me, and why she ran out as she did"; that he overtook her at the corner of Edward and Cleveland Streets in

Youngstown, Mahoning County, Ohio, and they crossed Hillman Street together to the southeast corner of Hillman and Cleveland Streets, where he took his wife by the hands, and led or pulled her back diagonally across Hillman Street to the north side of Cleveland Street.

Further defendant testified that while on Cleveland Street, and while he was pulling her back toward Hillman Street, she struck him in the face with her purse, and kicked him a couple of times, "And she kicked me the second time on my leg and pain ran just all over me, and I just went blind, I just grabbed her and went blind, and what happened I just couldn't say. I just saw red just like that."

The record clearly discloses that after she struck and kicked him he picked her up "bodily" and threw her to the pavement, kicking her head and beating it against the pavement and a part of a steel catch basin situated near the intersection of Cleveland and Hillman Streets.

A state witness to defendant's acts testified that he admonished defendant to quit beating "the woman," and that defendant replied that the woman was his wife, and he could treat her as he pleased; that defendant "was in a rage and he seemed to be out of his head"; and verified defendant's testimony that he was holding his wife's wrists as he pulled her across Hillman Street.

A second state witness testified that defendant had his wife by the arm trying to take her across the street; that he saw defendant pick his wife up over his head and throw her down on the ground, then kick her, and start beating her head on the "sewer lid"; that defendant "was mad and in a rage"; and that when they tried to stop him beating his wife he told them (he and the first witness) to leave or he would "start on them."

A third state witness, a reputable and respected citizen of Youngstown, testified that he saw defendant kick his wife in the head twice, and heard him say "this is my damm wife, and I will kill her if I want to, and I will kill any G-- D-- body that interferes"; that such statement was made while defendant was "very much in a rage, and that he spoke like a man in a rage."

A fourth state witness testified:—

"The bus stopped to let two fellows on the bus and instead of getting on the bus they hollered, 'leave that woman alone,' and at that time I stood up on the bus to see what was going on. I got off the bus and saw that it was Lucille hollering.

"At the time I saw him he was holding her to keep her from getting away. * * * She was in a half-way position on her knees. * * * I ran across the street and hollered, 'John, leave her alone.' He says, 'This is my wife, g-- d-- it, and I will kill her or anybody that messes with me.' * * * He was hitting her head against the sewer lid. * * * Some fellows were hollering 'leave the woman alone' and he says, 'it is my wife, I will kill her.' "

Still another state witness testified:—

"I got out of the car and I ran up to the corner and I saw a colored man on his knees and a colored woman on her back and he had her by the ears and he was hitting her head against the sewer. * * * I ran down to my house and got my mother and my mother came up to the corner with me. * * * I saw him kick her in the face, and drag her up a little ways from where the manhole was. * * * He says, 'she is my wife and I will do what I want.' "

There is evidence that after assaulting his wife, from the injuries received in which assault she died on January 17, 1949, defendant walked part way, and rode part way, from the place of assault to his place of employment in Mosier, a hamlet situated some distance from Youngstown; went to the bunk room in the round house of the Erie Railroad Company, where he was employed, and was arrested there about 2:30 on the morning of January 9, 1949, at which time, in referring to his wife's assault, he said "I didn't know I did it"; that he "remembered taking a swing at her and everything went blank."

Youngstown City Detective Carney testified that when he took defendant's statement on the morning of January 9, 1949, he cried and told of his love for his wife.

Defendant's mother-in-law testified concerning much quarreling between the defendant and his deceased wife; that during one of such quarrels deceased said "he fights with me every month when I have a period as though I could help it"; that she said to defendant, "John, in the short time that you have been here, there has been more fights and commotion than in the whole forty years that I have been married. I cannot stand it and the next time you lay your hand on her I am going to call the law."

By grounds of error assigned by brief, which alone we will dispose of, and which differ from those formally and separately filed, defendant contends:—

"The court erred in overruling the motion of the defendant made at the conclusion of the state's evidence that 'the court arrest from consideration of the jury the charge of second-degree murder, for the reason that the state has failed to prove such charge beyond the existence of a reasonable doubt.' (This assignment of error was withdrawn by counsel for defendant during argument in open court, and accordingly we will not pass upon it.)

"Misconduct of the prosecuting attorney to the substantial prejudice of the defendant.

"The court erred in its general charge in instructing the jury on Page 222, with regard to the right of the jury to 'deduce' or 'presume.'

"The court erred in its general charge in not more fully instructing the jury on the elements of manslaughter (§12404 GC) and more fully instructing the jury as to the degree of the crime, if the acts of the defendant were one on sudden provocation, which provocation amounted in its effect upon the defendant of uncontrollable passion and anger.

"The verdict of the jury is decidedly and manifestly against the weight of the evidence, and the verdict of the jury under the evidence should have been manslaughter.

"The court erred in overruling the motion of the defendant for a new trial."

By brief counsel for defendant argues:—

"Under the indictment of second-degree murder, it was incumbent upon the state to prove beyond the existence of a reasonable doubt that John McGhee assaulted Ruth Mc-Ghee with the purpose to kill and assaulted her maliciously with the purpose of killing her (in which statement we concur). There is absolutely nothing in the record by which the jury could have found beyond the existence of a reasonable doubt that McGhee assaulted the decedent with the purpose of killing her, or that he maliciously intended to kill her. On the contrary, all of the evidence in this case bears out the theory, that the taking of this life was not intended by McGhee, that he had no such purpose, and that he never intended to kill. On the contrary, the only crime which was proven to the jury under the evidence was that the assault, which later resulted in the death of Ruth McGhee, was an assault on sudden provocation and under uncontrollable passion, 'hot-blood' and at a time when the defendant had suddenly been plunged into a highly emotional state."

We cannot so conclude.

The prosecutor objected to a question defendant's counsel asked him, which defendant's counsel then withdrew. Then the prosecutor said "we do not care for the sake of this lawsuit, whether he held her nose or her head, but he murdered her that's all." The trial judge overruled defendant's motion for the withdrawal of a juror, and instructed "the jury to disregard the remarks of the prosecutor."

In cross examining a character witness of defendant the prosecutor asked the witness: "What is his reputation now?"

In argument to the jury the prosecutor said:—

"But this I can venture to say and I say it to you in honesty that, and I have the right to say to you under this evidence, had I known they would ever have produced a motive for the killing like they did in an attempt to get you to move into manslaughter, had I known that any such a motive would have been given me, he would be here charged with murder in the first degree."

Further in his argument to the jury the prosecutor said:—

"* * * then you have the right to come into jury and say my mind exploded and I killed her, but just give me manslaughter, don't give me second degree because I didn't mean to do it, I am sorry. All the time he talked about what he did, this young boy, being taught to kill in the Pacific. I had two boys in that war. They were taught to kill and they were there for months and months and one of them will never get over it because he will be crippled for life. They don't come back and kill because somebody makes them mad; that is no excuse for them."

Defendant's counsel, who was not his counsel in the court of common pleas, contends that the stated actions and remarks of the prosecutor were highly prejudicial to defendant, and entitled him to a reversal of the judgment entered against him.

It is observed that defense counsel in the trial court made no objection to parts of the prosecutor's argument of which complaint is made now; and while the prosecutor admits saying "well he murdered her," yet he contends that defense counsel said the same thing when he urges that defendant be convicted of manslaughter only. We have read the prose-

cutor's argument, of which complaint is made, and without further word conclude that the jury was not prejudiced thereby.

In his general charge to the jury the trial judge said:—

"The design and purpose to kill may be deduced from all the attending and surrounding circumstances, the manner and method of inflicting the wound or wounds and the kind and character of the methods employed. Was the act which caused the death of the deceased one plainly and obviously likely to destroy life? If so, then the presumption is that that result was intended in the absence of proof to the contrary. It is a general presumption of law that what a person does wilfully he intends to do and that he intends the natural and necessary consequences of his voluntary act unless the circumstances are such as to indicate the absence of such intent."

Defendant contends that such "instruction was erroneous in law and highly prejudicial."

In our opinion the trial judge in his general charge informed the jury fully and completely the essential elements of the crime of manslaughter, and the elements necessary to be shown beyond a reasonable doubt before a conviction therefor could be maintained.

"2. Criminal cases must be reviewed in Ohio in the light of §13449-5 GC, which amongst other things provides, 'nor shall any judgment of conviction be reversed in any court * * * for any misdirection of the jury unless the accused was or may have been prejudiced thereby.'

"4. The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court.

"7. * * * 'It is not always possible to prove a purpose by direct evidence, for purpose and intent are subjective facts. That is, they are within the mind of man, and hence, in determining purpose you may look to all the surrounding circumstances, including what was said and done in relation thereto; bearing in mind the presumption of law, that every one is presumed to intend the natural and probable consequences of his voluntary acts, unless the circumstances are

such as to indicate the absence of such intent. When an unlawful act, however, is proved to be knowingly done, no further proof is needed on the part of the state in the absence of justifying or excusing facts, since the law presumes a criminal intent from an unlawful act knowingly done.' Such an instruction, although an abstract proposition of law, was not prejudicial." State v. Huffman, 131 Oh St 27.

"Under a charge of murder in the second degree, proof that the killing was done purposely may be deduced from the attendant circumstances, the type of instrument used, the manner of its use, and its tendency to destroy life when used in that manner.

"Only simple malice is required to be shown in murder of the second degree, and it may be implied from the facts proved." State v. Stallings, 82 Oh Ap 337.

Further counsel for defendant contends that the trial judge erred in "its general charge in not more fully instructing the jury on the elements of manslaughter (§12404 GC) and more fully instructing the jury as to the degree of the crime, if the acts of the defendant were one on sudden provocation, which provocation amounted in its effect upon the defendant of uncontrollable passion and anger."

Reading the general charge of the trial judge, and considering it as a whole, we find no error prejudicial to defendant therein.

We have read the bill of exceptions submitted to us for review carefully, as is our solemn duty where, as in this case, defendant is being deprived of his liberty during his life, and without further reference to the evidence, which would not be helpful in understanding the questions presented, we can not reach the conclusion, urged by counsel for defendant, that "the verdict of the jury is decidedly and manifestly against the weight of the evidence, and the verdict of the jury under the evidence should have been manslaughter"; nor that the "court erred in overruling the motion of the defendant for a new trial."

The judgment of the court of common pleas is affirmed.

NICHOLS, J, BUCKLEY, J, concur in judgment.