THE STATE OF OHIO, APPELLEE, *v.* COSBY, APPELLANT.

(No. 517—Decided April 2, 1955.)

*Mr. Stanley N. Husted,* prosecuting attorney, and *Mr. Glenn E. Detling,* for appellee.
*Mr. James C. Cobb,* for appellant.

Miller, P. J. This is an appeal on questions of law from a judgment of the Common Pleas Court rendered on the verdict of a jury finding the defendant guilty of murder in the first degree, without a recommendation for mercy.

Two errors were assigned, but during the oral presentation of the case before this court, counsel for the defendant, appellant herein, withdrew the first assignment of error, leaving only the second alleged error for our consideration. This assignment of error charges that the verdict is not sustained by sufficient evidence and is contrary to law. This requires a careful examination of the entire record, which we have made. Our analysis of the record discloses that the pertinent facts show that at the time and place set forth in the indictment, the decedent, Myers, was shot two times by the defendant, which resulted in death several hours thereafter.

The appellant urges that there is nothing in the record from which the jury could find that the killing was purposely committed and with deliberate and premeditated malice, as required by Section 2901.01, Revised Code. Such a finding is necessary in order that the verdict might be sustained. An examination of the testimony pertinent to this assignment of error discloses that the defendant had attended a "crap game" at the home of his friend Burton; and that during the game an argument arose between the defendant and one of the participants, Fred Jones. As a result thereof, Jones struck the defendant in the eye with his fist, causing him to fall to the floor which, according to Jones, put him out. Immediately thereafter, Jones and all the other guests departed, leaving Burton and the defendant alone in the house. The injury to the defendant's eye was rather severe, was bleeding and swelling. Burton gave temporary aid to the wound and then called a taxicab to take the defendant to his home.

Burton testified that the defendant was served no intoxicating liquor in his home and that he was sober when he left in the cab. The defendant testified, however, that he had a bottle of liquor in his pocket that evening and that he would occasionally go to the toilet and take a drink. The arresting officers testified that he appeared to have been drinking when first con

tacted but that he was not intoxicated, although he became quite drunk thereafter at the hospital.

The defendant said that when he entered the taxicab he ordered the driver, Myers, to go slow; and that he took an automatic pistol out of his pocket, removed the safety, opened the right rear window and pointed the gun out, intending to shoot Jones if he were able to see him. The deceased (Myers), who was the driver of the taxicab, did not see the gun at that time, but warned him to stay out of trouble. Later, when the cab stopped to discharge defendant, the light came on, the decedent looked around and, seeing the gun in defendant's hand, struck it causing it to be discharged. Counsel for the defendant urges that a scuffle ensued for the gun, causing the firing, but the defendant said that the deceased only struck at it attempting to knock it out of his hand. The extent of that struggle was clearly a question for the jury.

Concerning the struggle, the defendant testified as follows:

"Q. Did Mr. Myers [the decedent] say anything to you? A. All he said, he said, 'If I was you I wouldn't get in no trouble,' and the next thing I know he hits at my hand and the gun commenced going off and I don't know whether we both was trying to get out of the cab or what—.

"Q. How did Mr. Myers happen to get shot, as far as you know? A. As far as I know he got shot by hitting at my hand.

"Q. How many times did he hit at your hand? A. I don't know."

It should be noted that the gun was discharged not only once, but seven times, two of the shots wounding the decedent in the arm and in the chest and the other five shots striking at widely scattered spots in the taxicab.

It appears that the defendant had never seen the deceased before getting into the taxicab, and that there was no argument before the shooting. The question, therefore, presented is whether there was a sufficient showing of deliberate and premeditated malice on the part of the defendant. Clearly, the evidence was sufficient to warrant a finding that the killing was purposeful and malicious and not accidental. It should also be noted that the deceased was shot two times and that five other

shots were fired. That required a period of time, and such happening would not naturally result from a striking blow to the gun. The testimony shows conclusively that a single pulling of the trigger could not result in seven firings, but that in order to fire seven times the trigger not only had to be pulled each time but simultaneously there also had to be a squeezing of the handle with a pressure of some four or five pounds.

Now the serious question presented is whether the evidence is sufficient to sustain a verdict of murder in the first degree. We think the jury was warranted in finding that the killing was purposeful and malicious, for that may be presumed from the facts proved.

In *State* v. *Stallings,* 82 Ohio App., 337, 79 N. E. (2d), 925, this court held in paragraph one of the syllabus:

"Under a charge of murder in the second degree, proof that the killing was done purposely may be deduced from the attendant circumstances, the type of instrument used, the manner of its use, and its tendency to destroy life when used in that manner."

In 21 Ohio Jurisprudence, 38, Section 11, it is said:

" 'Malice is implied when the killing is sudden, without *any* or *great provocation*; and, also, where the act done necessarily shows a depraved heart, as the giving of poison.' Malice in the legal sense signifies a wilful design to do another an unlawful injury, and this regardless of the fact that such design was prompted by hatred or revenge, or by hope of gain. An intentional killing without adequate provocation and without justification or excuse is a malicious killing."

See, also, *State* v. *McGhee,* 58 Ohio Law Abs., 377, 96 N. E. (2d), 419.

It, therefore, appears that a verdict of guilty of murder in the second degree would clearly have been in accord with the facts presented, but in order to sustain the conviction of murder in the first degree further proof was necessary showing that there was deliberate and premeditated malice in the mind and heart of the defendant at the time of the killing. A presumption of such malice may not be inferred from evidence of an intentional killing without more, although no specific time can be set for the act to be deliberated upon. The deliberation

must be cool and deliberate, not formed upon a sudden impulse, but in the exercise of clear reason. 21 Ohio Jurisprudence, 44, Section 12; *State* v. *Brooks,* 9 W. L. J., 407, 1 Dec. Rep., 109. There must be facts shown from which deliberation and premeditation may be inferred and such inference must be more reasonable than any other. The jury cannot be allowed to guess on this important element. *Dodig* v. *State,* 31 C. D., 507, 16 C. C. (N. S.), 311; *State* v. *Koons,* 47 Ohio Law Abs., 620, 71 N. E. (2d), 501; 21 Ohio Jurisprudence, 44, Section 12.

Our examination of the testimony reveals no facts from which it could be inferred that there was deliberate and premeditated malice in the mind of the accused at the time of the commission of the wrongful act.

The facts in this case establish a killing without reason, justification, or excuse. There are no extenuating circumstances. The man who was killed was a good citizen, carrying on a useful service and admonishing the defendant to keep out of trouble. Those facts move one to apply the doctrine of reprisal against the individual responsible for this needless tragedy. But the law of Ohio, unlike the common law, fixes several degrees of homicide and defines the elements which must be established to support a conviction of any of them.

Here, there is some suggestion that the killing may have been accidental and that the defendant was intoxicated. The wild range of the seven shots discharged at the time of the killing may be accounted for by a struggle between Myers and the defendant, or, as he said, by the striking of the gun in his hand by Myers. An arresting officer said that the defendant was staggering when he first saw him. However, the jury had the full right under the evidence to indulge the presumption that the killing was purposeful, thereby justifying a verdict of second degree murder.

As we have said, to support a verdict of first-degree murder, the killing must be proved to have been committed with deliberate and premeditated malice. We search the record in vain to find such proof or circumstances from which it can be inferred. The defendant did not know Myers. So far as the record shows, he had never before seen him. There was no argument, no trouble of any kind prior to the killing. Delibera-

tion and premeditation, if proved, need not continue for any given time. But a charge that "deliberation and premeditation may be accomplished in a very short time—in a moment—so swift is thought," was disapproved in *Burns* v. *State,* 3 W. L. Gaz., 323, 3 Dec. Rep., 122. See *Shoemaker* v. *State,* 12 Ohio, 43.

If the defendant purposed to kill Myers prior to whatever occurrence took place when he did kill him, he had full opportunity to do so. For some time prior to the killing, he was seated in the taxicab in back of Myers and could have discharged the gun without hinderance and placed the shot or shots with accuracy into a vital part of the body of Myers.

There are but two plausible explanations of this killing as it occurred according to the record. (1) The defendant because he was drunk or mentally disturbed by reason of the blow over his eye did not comprehend what he was doing. The jury found, as it had full right to do, against this theory. (2) When the defendant was about to alight from the cab, Myers, seeing the gun and believing that the defendant intended to or was going to menace him, struggled with the defendant, whether by striking at the gun or otherwise, and that then defendant formed the purpose to and did kill Myers. This theory did not prove premeditation and deliberation.

Although motive is not an essential of homicide, it is always helpful, if appearing, in proving the probability or improbability of guilt. *Fabian* v. *State,* 97 Ohio St., 184, 119 N. E., 410. There is not a scintilla of evidence in the testimony of the defendant, in his written confession, in anything he was reported to have said, as heartless as it was, or from the circumstances appearing which suggest any motive for the killing of Myers. A sane man, and it must be assumed that the defendant was sane, in the situation appearing at the time of the killing, could have had no reason to deliberately and premeditatedly take the life of Myers. Some showing must appear in the proof, from which such purpose may be drawn or inferred, to justify a verdict of murder in the first degree.

A case somewhat similar to this, wherein the verdict of murder in the first degree was reduced, is *State* v. *Porello* (Court of Appeals for Cuyahoga County 1941), 33 Ohio Law

Abs., 110, 33 N. E. (2d), 23, affirmed 138 Ohio St., 239, 34 N. E. (2d), 198. The court, in the opinion in that case, stated:

"Some importance was attached to the fact that seven shots were fired in all. We think it just as likely that a person with a finger on a trigger of an automatic would continue to shoot in the case of a killing in hot blood as in the case of coldly premeditated murder."

There is a principle of law that if one intending with deliberate and premeditated malice to kill another kills a third person against whom he has no malice and whom he has no purpose to kill, he may, notwithstanding, be found guilty of murder in the first degree. *Wareham v. State,* 25 Ohio St., 601. Thus, had the defendant, intending to kill Jones, shot and inadvertently killed Myers, he could properly have been found guilty of murder in the first degree. But that principle may not be given application here, because at the time of the killing the defendant did not shoot intending to kill Jones. Had he done so, deliberation and premeditation could have been found because he had been stalking Jones with a loaded gun with the safety off during the taxi ride prior to the killing.

Just what may have confused the members of the jury and prompted the verdict as returned, requiring proof beyond a reasonable doubt, we cannot find from the record, unless they may have felt that the deliberated and premeditated purpose to kill Jones supported such a finding in the killing of Myers.

A modification of the judgment is required and the cause is remanded to the trial court with instructions that a judgment be entered finding the defendant guilty of murder in the second degree and that sentence be pronounced accordingly.

*Judgment accordingly.*

Hornbeck and Wiseman, JJ., concur.