PEOPLE *v.* MORRIN

1. HOMICIDE—FIRST-DEGREE MURDER—ELEMENTS OF OFFENSE.

First-degree murder requires proof of malice aforethought and wilfulness, premeditation, and deliberation (MCLA 1971 Cum Supp § 750.316).

2. HOMICIDE—FIRST-DEGREE MURDER—SECOND-DEGREE MURDER—NEW TRIAL.

New trial need not be ordered for a defendant convicted of first-degree murder even though the evidence presented did not warrant a reasonable inference that the defendant killed his victim with deliberation and premeditation where the jury's verdict, read in light of the charge, constituted an express finding that the homicide was intentional and not committed under circumstances of mitigation nor justifiable or excusable; judgment was remanded for entry of a conviction of second-degree murder.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide §§ 44–52.
[2, 12, 13, 16–21, 28] 40 Am Jur 2d, Homicide § 558.
[3] 40 Am Jur 2d, Homicide § 1.
[4–6] 40 Am Jur 2d, Homicide §§ 1, 110.
[7, 10, 15] 40 Am Jur 2d, Homicide §§ 41–53.
[8] 40 Am Jur 2d, Homicide §§ 45, 50, 51.
[9] 40 Am Jur 2d, Homicide §§ 50, 51.
[11] 40 Am Jur 2d, Homicide § 255.
[14, 16–21] 40 Am Jur 2d, Homicide § 50.
  Homicide: presumption of deliberation or premeditation from the fact of killing. 86 ALR 656.
  Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.
[22] 40 Am Jur 2d, Homicide § 536.
[23] 40 Am Jur 2d, Homicide §§ 463, 464.
[24] 53 Am Jur, Trial §§ 936–940.
[25, 26] 40 Am Jur 2d, Homicide §§ 416–420.
  Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 73 ALR2d 769.
[27] 40 Am Jur 2d, Homicide §§ 298–309.

3. HOMICIDE—TYPES OF HOMICIDE.
   Homicide, the killing of one human being by another, may be either innocent or criminal.

4. HOMICIDE—INNOCENT HOMICIDE.
   A homicide is innocent if it is justifiable or excusable.

5. HOMICIDE—JUSTIFIABLE HOMICIDE.
   A homicide is "justifiable" if it is authorized, as in the case of self-defense, or if it is commanded by law, as in the execution of a death sentence.

6. HOMICIDE—EXCUSABLE HOMICIDE.
   A homicide is "excusable" if the death is the result of an accident and the actor was not criminally negligent.

7. HOMICIDE—MURDER—ELEMENTS.
   A person who kills another is guilty of the crime of murder if the homicide is criminal, neither justifiable nor excusable, and if it is committed with malice aforethought.

8. HOMICIDE—MALICE AFORETHOUGHT—DEFINITION.
   Malice aforethought is the intention to kill, actual or implied, under circumstances which do not constitute excuse or justification or mitigate the degree of the killing to manslaughter.

9. HOMICIDE—INTENT TO KILL—IMPLIED INTENT.
   The intent to kill may be implied by law where the actor actually intends to inflict great bodily harm or the natural tendency of his behavior is to cause death or great bodily harm.

10. HOMICIDE—MURDER—ILL WILL.
    A killing may be murder even though the actor harbored no hatred or ill will against the victim and even though he acted on the spur of the moment.

11. HOMICIDE—MURDER—MALICE AFORETHOUGHT—INFERENCE PERMISSIBLE—PRESUMPTION OF INNOCENCE.
    Malice aforethought is a permissible inference, not a presumption arising from the fact of a homicide; the presumption of innocence applies to the element of malice.

12. HOMICIDE—FIRST-DEGREE MURDER—MALICE AFORETHOUGHT—INSTRUCTIONS TO JURY.
    Courts in order to clarify the confusion surrounding the meaning of "malice aforethought" might well instruct a jury in a murder case that it can convict the defendant of murder

only when it is convinced beyond a reasonable doubt that the defendant (1) actually or impliedly intended to kill and (2) circumstances constituting excuse, justification, or mitigation do not exist.

13. HOMICIDE—FIRST-DEGREE MURDER—ELEMENTS.
First-degree murder is a statutory offense which consists of the common-law offense of murder, a homicide committed with malice aforethought, and of a murder by poison, lying in wait, or by any other kind of wilful, deliberate, and premeditated killing, or in the perpetration or attempt to perpetrate certain crimes enumerated by statute (MCLA § 750-.316).

14. HOMICIDE—MURDER—MALICE AFORETHOUGHT—PREMEDITATION.
"Malice aforethought" is not synonymous in law with "premeditation."

15. HOMICIDE—MURDER—DEGREES OF MURDER—POLICY.
The division of murder into degrees was prompted by a feeling that not all murders reflected the same quantum of culpability.

16. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION AND DELIBERATION.
Premeditation and deliberation are all that distinguish first-degree from second-degree murder; in order to preserve the distinction between the degrees of murder, premeditation and deliberation must be given independent meaning in a prosecution for first-degree murder.

17. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION AND DELIBERATION—DEFINITIONS.
Premeditation is to think about beforehand; deliberation is to measure and to evaluate the major facets of a choice or problem.

18. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION AND DELIBERATION—THOUGHT PROCESS—REFLECTION.
Premeditation and deliberation characterize a thought process undisturbed by hot blood; some orderly reflection is required for premeditation and deliberation and, while the time period is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a second look.

19. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION AND DELIBER-ATION—EVIDENCE—INFERENCES.

Premeditation and deliberation may be established by inferences from all the facts of the case.

20. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION AND DELIBER-ATION—EVIDENCE.

Insufficient evidence existed to warrant an inference that the defendant killed his victim, a hitchhiker, with premeditation and deliberation where there was no prior relationship between the parties tending to show motive; the murder weapon, tongs used by the defendant in his trade and usually carried with him, was not acquired or positioned in preparation for homicide; no evidence existed to support an inference that the defendant transported the victim to the secluded place where the murder occurred for an illicit or criminal purpose; the defendant's actions before the killing, giving the victim a ride and following the victim's road directions, and the circumstances of the killing itself, a struggle in which the victim was killed, were as consistent with the absence as with the presence of premeditation and deliberation; the defendant's distraught and hysterical condition after the killing, while perhaps showing consciousness of guilt, was neither coherent nor organized enough to suggest a place in an organized scheme; and where there was a bizarre rectal wound on the victim which, especially assuming the truth of the prosecution's case that the wound was inflicted after the victim was dead, was inconsistent with rational, deliberative processes.

21. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION AND DELIB-ERATION—EVIDENCE—DEADLY WEAPON—INFERENCES.

The use of a deadly weapon in a killing may give rise to a presumption or, at least, permit an inference of premeditation where there are other circumstances showing motive or plan which would make reasonable the inference that the use of the weapon was not a spur-of-the-moment decision, but rather that it was acquired or positioned with the thought beforehand of using it to kill the victim.

22. HOMICIDE—MURDER—CROSS-EXAMINATION.

Prosecutor's asking the defendant, charged with murder, whether he told his sister that he had rammed tongs into the deceased's rectum after the victim was already dead was proper cross-examination where, although not testifying to the matter on direct examination, the defendant's sister did testify to it at preliminary examination.

23. CRIMINAL LAW—TRIAL—PROSECUTOR'S ARGUMENT—IMPROPER AR-
GUMENT—APPEAL AND ERROR.
    Prosecutor's overzealous emphasis to the jury concerning a rec-
    tal wound on the victim of a murder was disapproved by the
    Court of Appeals; however, since no objection or motion for
    a corrective instruction or a mistrial was made, the error was
    not preserved for review.

24. TRIAL—REREADING OF TESTIMONY—DISCRETION.
    The reading to jury or the granting of permission for the jury's
    reading of testimonial excerpts is in the trial court's discretion;
    the trial court's decision is reversible only if there was an
    abuse of discretion.

25. HOMICIDE—MURDER—EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY.
    Photographs of a homicide victim are admissible at trial if they
    accurately depict what they represent and are helpful in il-
    luminating a material issue.

26. HOMICIDE—MURDER—EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY.
    Admitting a photograph of the victim of the murder with which
    the defendant was charged was not an abuse of discretion even
    though the photograph was taken at the morgue rather than
    at the scene of the crime where the photograph was an ac-
    curate picture of the body, the moving of the body did not
    affect the accuracy of the photograph, and the photograph
    was intended to show the body, not the scene of the crime.

27. WITNESSES—CHARACTER WITNESS—BASIS.
    Testimony of a character witness must be based on what the
    witness has heard others in the party's business or residential
    community say about the party whose character is in issue.

28. HOMICIDE—FIRST-DEGREE MURDER—SECOND-DEGREE MURDER—RE-
MANDING FOR ENTRY OF JUDGMENT.
    An appellate court can remand a first-degree murder conviction
    to the trial court for the entry of a judgment of second-degree
    murder where the defendant was convicted on evidence suffi-
    cient only to prove the less aggravated crime.

Appeal from Monroe, James J. Kelley, Jr., J.
Submitted Division 2 June 10, 1969, at Detroit.
(Docket No. 4757.)  Decided March 16, 1971.  Leave
to appeal denied August 3, 1971, 385 Mich 775.

Leslie Taylor Morrin was convicted of first-de-
gree murder.  Defendant appeals.  Remanded for

entry of judgment of conviction of second-degree murder and resentencing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas J. Rostash,* Prosecuting Attorney and *E. J. McCormick, Jr.,* Assistant Prosecuting Attorney, for the people.

*Daniel L. Sullivan,* for defendant on appeal.

Before: Fitzgerald, P. J., and Levin and T. M. Burns, JJ.

Levin, J. Leslie Taylor Morrin was convicted of first-degree murder[1] by a jury in Monroe County Circuit Court. At the trial he testified that he killed the victim in self-defense. His evidence, coupled with the jury's unquestioned right to reject the claim of self-defense, provided sufficient evidence to sustain a verdict finding that he committed the crime of second-degree murder by killing another human being with malice aforethought.[2]

The statutory offense of which Morrin was convicted was, however, first-degree, not second-degree, murder. Although evidence that a homicide was committed with malice aforethought will support a conviction of second-degree murder, to convict an accused person of first-degree murder the people must additionally prove that the murder was committed with willfulness, deliberation, and premeditation. We hold that the evidence presented in this case is not sufficient to support a reasonable inference that Morrin killed his victim with the requisite deliberation and premeditation.

[1] MCLA § 750.316 (Stat Ann 1954 Rev § 28.548); see text accompanying fn 29 for a quotation of this statutory provision.

[2] "All other kinds of murder shall be murder of the second degree." MCLA § 750.317 (Stat Ann 1954 Rev § 28.549).

There is, however, no need to order a new trial. The jury's verdict, read in the light of the judge's charge, constituted an express finding that the homicide was intentional and neither justifiable nor excusable nor committed under circumstances of mitigation, and hence that it was committed with malice aforethought. Since a conviction of second-degree murder is proper upon such a finding, we remand for entry of a judgment convicting Morrin of second-degree murder. Upon conviction of first-degree murder a life sentence is mandatory. A defendant convicted of second-degree murder may, but need not, be sentenced to a life term. Morrin shall, therefore, be resentenced.

## I.

Morrin killed William Abell, a 53-year-old unmarried male. Abell died from some combination of eight blows to the head inflicted by Morrin with a large pair of tongs.

There were no witnesses to the killing or the events that preceded it. Morrin's testimony is the only affirmative evidence concerning the circumstances of the killing.

Morrin was 37 years old at the time of the killing. He was a millwright by trade. On March 27, 1967, at approximately 8:30 a.m., he completed 17 hours of work in Oregon, Ohio. He testified that after eating breakfast he went to a union hall in nearby Toledo, Ohio, to talk to the union's business agent. Finding that the agent was not there, he stopped at a nearby bar, where he periodically phoned the union hall to see if the business agent had returned. Morrin drank seven or eight glasses of beer before 1 p.m., when he learned the agent was gone for the day.

While sitting in the bar, Morrin was approached by Abell, a complete stranger. Abell asked for a ride to Erie, Michigan, which was near Morrin's home in Monroe, Michigan. After Morrin learned that the business agent was unavailable, he and Abell left together.

When they reached Erie, Abell asked to be taken to a specific location. Morrin agreed, and proceeded at Abell's direction to traverse a number of quite remote, unpaved roads. Ultimately the car became mired in a mudhole. Abell alighted to push while Morrin attempted to extricate the vehicle by rocking the wheels. Their joint efforts succeeded, and the car was freed, whereupon Abell re-entered the car.

At this point, Morrin testified, Abell pulled out a knife. Grabbing Morrin by the hair, he held the knife to his throat. Morrin offered to let Abell have all the money in his possession. Abell said that Morrin would first have to commit an oral sexual act upon him.

With Abell still holding the knife at Morrin's throat, they slid out of the car, whereupon Morrin was forced to assume a kneeling position, facing Abell. Abell directed Morrin to remove his (Abell's) trousers, but when Morrin did not move Abell partially removed them himself. Abell then commanded Morrin to commit the sexual act. When Morrin still did not move, Abell grasped him by the back of the head to pull him forward.

Morrin testified that he then struck Abell in the testicles. Rising to his feet, Morrin started to flee before he saw Abell advancing on him with the knife. Morrin then grabbed a large pair of tongs from the back seat of the car. (The tongs apparently were one of the tools of his trade and he customarily took them on trips to and from work.)

A struggle then ensued and the two men exchanged blows. Finally, as Morrin swung the tongs, they entered Abell's rectum. Abell fell forward slightly and Morrin struck him several more times with the tongs. When Abell fell to the ground, Morrin seized Abell's knife and threw it away. (The knife was not found.)[3] Morrin then ran to his car and drove away. He drove straight home, stopping once at a gasoline station. He told the attendant that he had been in a scuffle.

Upon reaching home, he was in a distraught and hysterical state. His wife called his sister who immediately came over. Morrin said that he had hurt someone, perhaps killed him. He was crying and somewhat incoherent. He kept repeating the words, "if he hadn't disgusted me so". He took his sister out to the car to convince her that he was telling the truth. His sister washed the blood off the car and also washed the tongs which were in the back seat.

Morrin and his sister drove back to the place of the fight to see whether Abell was alive. The sister drove. It took them some time to find the exact place. Morrin alone got out of the car and found that Abell was, indeed, dead. They then returned home. It was agreed that they would do nothing immediately but would take some action the next morning.

The sister then returned to her home and phoned an attorney who then phoned the police. The police picked up the sister who took them to Abell's body. Morrin said that the next morning, without having

---

[3] The record does not indicate that the scene was searched except for a search made shortly after Abell's body was discovered and before Morrin was taken into custody. A police officer testified that the police did not look for a knife when they made the search and, if there had been a knife, because of the terrain, the likelihood or probability is that it would have escaped detection.

heard from his sister, he decided to turn himself in. He met the police on the way to his sister's home.

This was substantially the evidence upon which the case went to the jury. The prosecution introduced numerous photographs of the deceased taken at the scene. Morrin produced two character witnesses. Throughout the trial, the prosecutor repeatedly emphasized the bizarre rectal wound suffered by Abell; he claimed that the wound was inflicted after Abell was already dead.

The jury was instructed on the elements of first-degree murder, second-degree murder, and manslaughter, as well as self-defense.

## II.

Homicide, the killing of one human being by another, may be innocent or criminal. There are two categories of innocent homicide; they are called justifiable homicide and excusable homicide. Homicide is "justifiable" if it is authorized (*e.g.*, self-defense) or commanded (*e.g.*, execution of a death sentence) by law. Homicide is "excusable" if the death is the result of an accident and the actor was not criminally negligent.[4]

A person who kills another is guilty of the crime of murder if the homicide is committed with malice aforethought.[5] Malice aforethought is the intention to kill, actual or implied,[6] under circumstances which do not constitute excuse or justification or mitigate

---

[4] Perkins on Criminal Law (2d ed), p 33. As to criminal negligence, see 1 Wharton's Criminal Law and Procedure, §§ 290, 291, pp 609–614; Perkins on Criminal Law (2d ed), p 71 *et seq.;* Moreland, Law of Homicide, p 99 *et seq.;* Clark and Marshall Crimes (6th ed), § 10.12, pp 634–637.

[5] Perkins on Criminal Law (2d ed), p 34; 1 Wharton's Criminal Law and Procedure, § 242, pp 522–527; Clark and Marshall, Crimes (6th ed), § 10.04, pp 561–566; Moreland, Law of Homicide, p 16.

[6] *People* v. *Potter* (1858), 5 Mich 1, 6; 1 Wharton's Criminal Law and Procedure, § 242, and authorities cited in fn 5.

the degree of the offense to manslaughter.[7] The intent to kill may be implied where the actor actually intends to inflict great bodily harm or the natural tendency of his behavior is to cause death or great bodily harm.[8] (The common-law felony-murder rule is an example of implied intent or implied malice aforethought.)[9]

Thus, as "malice aforethought" is now defined, a killing may be murder even though the actor harbored no hatred or ill will against the victim[10] and

---

[7] In general, mitigating circumstances are the commission of the killing in a sudden heat of passion caused by adequate legal provocation. 1 Wharton's Criminal Law and Procedure, § 274, p 580 *et seq.*; Perkins on Criminal Law (2d ed), p 54. Wharton and Perkins say that even where such mitigating circumstances are not present the crime may be manslaughter, not murder, when the actor kills in self-defense but was not entitled to do so under the circumstances, either because he was not free from fault or his belief that he was in danger was not justified. 1 Wharton's Criminal Law and Procedure, § 274, p 583; Perkins on Criminal Law (2d ed), p 70.

[8] Clark and Marshall, Crimes (6th ed), § 10.04; Perkins on Criminal Law (2d ed), p 36; 1 Wharton's Criminal Law and Procedure, § 242, pp 524–526. See, generally, Holmes, The Common Law, pp 51–63, and Moreland, Law of Homicide, pp 13–16 for the evolvement of the concept of implied intent.

[9] Perkins on Criminal Law (2d ed), p 37; Moreland, Law of Homicide, pp 14, 42; Clark and Marshall, Crimes (6th ed), § 10.07.

In Michigan certain felony murders are by statute murder of the first degree. MCLA § 750.316 (Stat Ann 1954 Rev § 28.548).

[10] See Perkins on Criminal Law (2d ed), pp 34, 35; authorities cited in fn 8; and, as an example, *People* v. *Roberts* (1920), 211 Mich 187, a mercy killing.

" 'Malice aforethought' means an intent, at the time of a killing, willfully to take the life of a human being, or an intent willfully to act in callous and wanton disregard of the consequences to human life; but 'malice aforethought' does not necessarily imply any ill will, spite or hatred towards the individual killed." 1 Devitt & Blackmar, Federal Jury Practice and Instructions (2d ed), § 43.05, p 538.

*Cf. Bonkowski* v. *Arlan's Department Store* (1970), 383 Mich 90, 99, a civil case, where a majority of the Court declared: "Malice, in its common acceptation, means ill will towards some person. In its legal sense, it applies to a wrongful act committed intentionally against that person, without legal justification or excuse."

"While actual hatred or enmity may be present, malice is not limited in its meaning to hatred, ill will, or malevolence. Moreover, malice aforethought may exist although there is no particular enmity or ill will toward the victim." 1 Wharton's Criminal Law and Procedure, § 242, p 524.

even though he "acted on the spur of the moment".[11] Whatever may be the philological origin of the words "malice aforethought", today "each word has a different significance in legal usage than in ordinary conversation".[12]

The nature of malice aforethought is the source of much of the confusion that attends the law of homicide.[13] The cause of this confusion has been the

To call the distinguishing factor "malice" is to confuse the reader and listener who naturally is looking for a state of mind although the state of mind of the actor is not necessarily important. Of course, one who actually intends to kill generally is malicious in the sense in which that term is used by most persons; but not if the killing is justifiable or excusable. A person who engages in behavior the natural tendency of which is to cause death or great bodily harm does not necessarily act in a state of mind which all or even most speakers of English would describe as malicious.

[11] *Nye* v. *People* (1876), 35 Mich 16, 19; *State* v. *Heidelberg* (1907), 120 La 300, 306 (45 So 256, 258).

"The fact that malice aforethought means merely that malice must exist at the same time as the act, in effect makes 'aforethought' meaningless surplusage." 1 Wharton's Criminal Law and Procedure, § 243, p 527; Perkins on Criminal Law (2d ed), p 35; Moreland, Law of Homicide, p 70.

"There is much learning and some subtlety in the older books upon the question whether a sudden homicide could be properly classed as murder, because that requires malice aforethought. The courts decided that the real test of malice in such cases was to be found in the presence or absence of adequate cause or provocation to account for the violence, and that an unprovoked homicide, however suddenly conceived, might be malicious." *Nye* v. *People, supra*, p 19.

Perkins says:

"Malice aforethought" probably once meant premeditation:

"Thus Lambard, writing in 1581 uses 'malice aforethought' in the sense of real and substantial premeditation although he does not require direct and positive evidence thereof." Perkins on Criminal Law (2d ed), p 53; Moreland also reports that Coke, writing in the middle of the 17th century, declared that a killing upon a sudden occasion (a chance medley) was without malice aforethought and was manslaughter, not murder. Moreland, Law of Homicide, p 64.

[12] Perkins on Criminal Law (2d ed), p 34; authorities cited in fns 10 and 11. Similarly, see 1 Wharton's Criminal Law and Procedure, § 242, p 523.

"Malice, in the definition of murder, has not the same meaning as in common speech." Holmes, The Common Law, p 53.

"In this case it is rather the popular than the legal sense of the word that has changed." 2 Pollock & Maitland, History of English Law (2d ed), p 469.

[13] Moreland, Law of Homicide, p 205; Perkins on Criminal Law (2d ed), p 46.

evolution of malice aforethought from an independently significant element of murder to a "term of art"[14] whose significance is largely historical and procedural.

The precise roots of malice aforethought are uncertain.[15] Common-law courts spoke of "malice prepense" as early as the 13th century.[16] The requirement that malice aforethought be established in all murder prosecutions represented the common law's recognition that a rational legal system will punish certain homicides (for example, those that are intentional) while excusing others (accidental homicides, for example).

From the beginning malice aforethought was defined principally in functional terms. We know

"Precision in the use of legal language is essential, particularly in the law of homicide. In a murder trial the use of a word or turn of a phrase may mark the difference between whether the accused leaves the courtroom free—or sentenced to death.

"Yet the phrase 'malice aforethought,' used in defining murder, peers at us like a demon through the dust of more than 400 years of history, lying in wait to clutter statutes and confuse juries. In examining the historical background of the phrase, one probes the roots of a term which, though withering on the vine, lives on to strangle the penal codes of the several States." Purver, The Language of Murder, 14 UCLA L Rev 1306 (1967).

14 *Austin* v. *United States* (1967), 127 App DC 180, 184 (382 F2d 129, 133).

15 See, for example, the "hypothesis" advanced in Kaye, The Early History of Murder and Manslaughter, 83 L Q Rev (Part I) 365, (Part II) 569 (1967); Moreland, Law of Homicide, p 9 *et seq.;* Plucknett, A Concise History of the Common Law (5th ed), pp 444–446; Kenny's Outlines of Criminal Law (19th ed), pp 147–155; Russell on Crime (12th ed), pp 465–477; Great Britain Royal Commission on Capital Punishment, Report 1949–1953, appendix 7, p 381 *et seq.;* ch 2, p 25 *et seq.*

The word "murder" is of more ancient origin. It meant a secret killing in early English law. After the Norman Conquest, William the Conqueror found it necessary to impose a heavy fine called the "murdrum" upon any hundred where a man was found slain; the sole defense was Englishry, *i.e.,* that the man slain was an Anglo-Saxon, not a Norman. Moreland, Law of Homicide, p 9; Milson, Historical Foundation of the Common Law, p 370.

16 See Kaye, The Early History of Murder and Manslaughter, *supra*, Part II, p 569; 2 Pollock & Maitland, History of English Law (2d ed), p 469; Perkins, A Re-Examination of Malice Aforethought, 43 Yale L J 537, 544 (1934).

what it did; it both distinguished criminal from innocent homicide and murder from manslaughter. Yet what it was, the precise state of mind which it described, eluded symmetrical definition.[17]

The common-law courts were faced with a difficult problem: malice aforethought was a requisite ele-

[17] Malice, observed Oliver Wendell Holmes, Jr., "is an averment of a conclusion of law which is permitted to abridge the facts (positive and negative) on which it is founded." Holmes, The Common Law, p 63.

Manslaughter (voluntary) has been defined as an intentional killing without malice, and murder as an intentional killing with malice. It is frequently said, perhaps in an effort to state the law of homicide in a nutshell, that the factor that distinguishes murder from manslaughter is the presence or absence of malice aforethought. Clark and Marshall, Crimes (6th ed), § 10.05, p 567; 1 Wharton's Criminal Law and Procedure, § 242, pp 522, 523; § 271, p 574; Perkins on Criminal Law (2d ed), p 51. But that is circular and misleading; murder and manslaughter are more accurately defined affirmatively than negatively.

Malice aforethought means intent to kill not under circumstances of excuse, justification or mitigation. Since excuse and justification are defenses to both murder and manslaughter, the principal factor that distinguishes murder from voluntary manslaughter is the presence or absence of circumstances of mitigation. But a killing is not necessarily murder even though it is neither justifiable, excusable nor committed under circumstances of mitigation.

It is murder only if there is intent to kill, actual or implied. Where there is no actual intent to kill, intent to kill will be implied only in certain circumstances, e.g., where the actor actually intends to inflict great bodily harm or the natural tendency of his behavior is to cause death or great bodily harm, where, as Perkins would put it (see fn 28), the actor has a "man-endangering state of mind."

But, even where there is actual intent to kill and circumstances of mitigation are not present, malice aforethought is not present if the actor acted justifiably, e.g., self-defense.

Thus, an intentional killing may or may not be "malicious" (it may be excused or justified or the offense reduced because of mitigating circumstances); an unintentional killing may or may not be "malicious" (intent to kill may be implied, but not necessarily, and even if intent is implied the killing may be excused, justified or the offense reduced to manslaughter by reason of mitigating circumstances); and the absence of mitigating circumstances does not necessarily make the offense murder (there must be actual or implied intent to kill).

Yet the common law sums up all these mottled, contradictory concepts in one term, "malice aforethought," a construct so complex that it is meaningless except to those initiated in the mystique of the law of homicide. See Moreland, Law of Homicide, pp 205, 206; Purver, The Language of Murder, 14 UCLA L Rev 1306, 1308 (1967).

ment of murder, but one so elusive that in many cases it resisted direct proof. Their solution was to create a presumption of malice. As early as the 16th century proof that the accused person killed the victim gave rise to a "presumption" that the act was done with malice aforethought. Once it was established that the accused killed the victim, the burden was upon the accused to prove circumstances of justification, excuse, or mitigation.[18]

This rule, firmly rooted in English law, has taken hold in a great many American jurisdictions,[19] including Michigan:

"if the act of killing was proved, the presumption of law is that it was done with malice aforethought.

---

[18] See Moreland, Law of Homicide, pp 20–23.

[19] Perkins says:

"It would be an unreasonable burden upon the prosecution to require it in every murder case to prove not only the killing of the deceased by the defendant, but also the nonexistence of every conceivable set of circumstances which might be sufficient to constitute either innocent homicide or guilt of manslaughter only. Thus the state is not required to prove (in addition to the killing of the deceased by the defendant) that the defendant was not so insane as to be wanting in criminal capacity, or that the killing was not by accident, or that it did not result from the privileged use of deadly force, or that it did not result from the sudden heat of passion engendered by adequate provocation or other matters of this kind. To require such proof would constitute an absurd waste of time. This difficulty is avoided by a rule of law in the form of a presumption. * * * Every homicide is presumed to have been committed with malice aforethought 'unless the evidence which proves the killing itself shows it to have been without malice.'

"Since this is a presumption in the true sense it merely places upon the defendant the burden of going forward with the evidence. It is rebuttable and may be overcome by evidence which throws a different light upon the situation or indicates exculpating or mitigating circumstances. If no such evidence is offered a conviction of murder is proper because of the 'presumed malice'." Perkins on Criminal Law (2d ed), pp 49–51.

See cases cited at 2 Wharton on Homicide, § 187, pp 188–193; similarly, see 1 Wharton's Criminal Evidence, § 132, pp 246–252. New Jersey is perhaps a representative jurisdiction:

"Our cases have long adhered to the view that proof of a killing raises a presumption of malice, and that it is incumbent upon the defendant to adduce facts of justification, excuse or mitigation unless they arise out of the evidence produced against him." *State* v. *Williams* (1959), 29 NJ 27, 43 (148 A2d 22, 31).

\* \* \* The burden of disproving malice is in all cases of murder cast upon the prisoner."[20] *People v. Potter* (1858), 5 Mich 1, 9.

The merits of the rule are that it relieves the prosecution from the necessity of proving the nonexistence of circumstances of excuse, justification, and mitigation—frequently an impossible burden—and instead allocates the burden of proving such circumstances to the defendant, who, arguably, has greater ability to do so than the prosecution.

"Ordinarily the government must prove beyond a reasonable doubt each element of the offense charged. But where the pertinent information is much more readily available to the defendant than to the government, the burden may be shifted to him, provided this can be done 'without subjecting the accused to hardship or oppression'. *Morrison* v. *California* (1934), 291 US 82, 87–89 (54 S Ct 281, 284; 78 L Ed 664). This proviso is required to safeguard the presumption of innocence." *Communist Party of United States* v. *United States* (1963), 118 App DC 61 (331 F2d 807, 814).

There is also, however, a grave drawback to this presumptive device. This defect arises in connection with jury instructions. To instruct a jury that malice is presumed from the fact of killing is to invite confusion concerning the ultimate burden of proof in the trial. The prosecution must always prove the defendant guilty beyond a reasonable doubt; a rule of law that shifts the burden of proof with respect to "malice" tends to cloud the dimensions of the prosecution's ultimate burden.

[20] Unless, added the court, "the case made by the prosecution shows it to be absent," in which event, of course, the people have failed to prove the allegation of the information. Accord: see authorities discussed in fn 19.

It was this danger which led the House of Lords in 1935 to repudiate instructions that charged jurors that they are to presume malice from the mere fact of killing.[21] Speaking of the presumption of innocence as a "golden thread" running through the common law,[22] the Court rejected a formulation that required the jurors to find a defendant guilty unless he discharged his burden of rebutting the presumption of malice.

The Court did not rule that malice must be proved by evidence independent of the killing itself. The fact of homicide still *permits* the jury to find malice aforethought. But it in no sense *compels* such a finding, even absent any evidence of excuse, justification or mitigation on the part of the defendant.

---

[21] *Woolmington* v. *The Director of Public Prosecutions*, [1935] AC 462, 472. The judge in that case charged:

"All homicide is presumed to be malicious and murder, unless the contrary appears from circumstances of alleviation, excuse or justification. 'In every charge of murder, the fact of killing being first proved, all the circumstances of accident, necessity, or infirmity are to be satisfactorily proved by the prisoner, unless they arise out of the evidence produced against him: for the law will presume the fact to have been found in malice until the contrary appeareth.' That has been the law of this country for all time since we had law."

Moreland says the rule has been repudiated in some American jurisdictions. Moreland, Law of Homicide, p 24. See, also, Criminal Law—The Abolition of the Presumption of Malice and Second Degree Murder, 34 Temple L Q 336 (1961), discussing *Commonwealth, ex rel. Johnson*, v. *Myers* (1961), 402 Pa 451 (167 A2d 295). But see *Commonwealth* v. *Jordan* (1962), 407 Pa 575 (181 A2d 310); *Commonwealth* v. *Kaminsky* (1969), 434 Pa 38 (252 A2d 695).

[22] See *In re Winship* (1970), 397 US 358, 363 (90 S Ct 1068, 1072; 25 L Ed 2d 368, 375), where the United States Supreme Court declared:

"The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law'. *Coffin* v. *United States* (1895), 156 US 432, 453 (15 S Ct 394, 39 L Ed 481)."

See, also, *Sinclair* v. *United States* (1929), 279 US 263, 296, 297 (49 S Ct 268, 73 L Ed 692); *Deutch* v. *United States* (1961), 367 US 456, 471 (81 S Ct 1587, 6 L Ed 2d 963); *Stack* v. *Boyle* (1951), 342 US 1, 4 (72 S Ct 1, 96 L Ed 3, 6).

"All that is meant is that if it is proved that the conscious act of the prisoner killed a man and nothing else appears in the case, there is evidence upon which the jury may, not must, find him guilty of murder." *Woolmington* v. *The Director of Public Prosecutions,* [1935] AC 462, 480.[23]

The Michigan Supreme Court recognized at an early date the importance of categorizing malice aforethought as a permissible inference rather than a presumption. In *Maher* v. *People* (1862), 10 Mich 212, 217, 218, the Court said:

"To give the homicide the legal character of murder, all the authorities agree that it must have been perpetrated with malice prepense or aforethought. This malice is just as essential an ingredient of the offense as the act which causes the death; without the concurrence of both, the crime can not exist; and, as every man is presumed innocent of the offense with which he is charged till he is proved to be guilty, this presumption must apply equally to both ingredients of the offense—to the malice as well as to the killing. Hence, though the principle seems to have been sometimes overlooked, the burden of proof, as to each, rests equally upon the prosecution, though the one may admit and require more direct proof than the other; malice, in most cases, not being susceptible of direct proof, but to be established by inferences more or less strong, to be drawn from the facts and circumstances connected with the killing, and which indicate the disposition or state of mind with which it was done. It is for the court to define the legal import of the term, malice aforethought, or, in other words, that state or disposition of mind which constitutes it; but the question whether it existed or not, *in the particular instance,* would, upon principle, seem to be as clearly a question of fact for the jury, as any other fact

---

[23] See Moreland, Law of Homicide, p 22.

in the cause, and that they must give such weight to the various facts and circumstances accompanying the act, or in any way bearing upon the question, as in their judgment, they deserve: and that the court have no right to withdraw the question from the jury by assuming to draw the proper inferences from the whole, or any part of, the facts proved, as presumption of law. If courts could do this, juries might be required to find the fact of malice where they were satisfied from the whole evidence it did not exist." (Emphasis by the Court.)

This firm admonition that the presumption of innocence applies to the element of malice as well as to the other elements of the offense and that malice aforethought is a permissible inference—not a mandatory presumption—arising from the fact of homicide is invaluable as an obstacle to one species of confusion in jury instructions.

There is, however, really no need to attempt to educate jurors about malice aforethought, a term which means one thing to laymen and something altogether different in the law. There is no need to tell a jury why the court thinks there is sufficient evidence to convict. From the fact that the judge is charging the jury rather than directing a verdict, it is apparent that the court is satisfied that there is sufficient evidence to justify reasonable men in finding the defendant guilty beyond a reasonable doubt.

"The arcane jargon of the law should not be recited *in vacuo* but, rather, the law pertinent to the case should be related in a meaningful manner to the evidentiary facts of the case." *Hill* v. *Harbor Steel & Supply Corporation* (1965), 374 Mich 194, 208.

Consider that the term "malice aforethought" is supposed to signify both what murder is: the pres-

ence of an essential element of the offense (intent to kill, actual or implied), and what it isn't: the absence of certain defenses (excuse and justification)—but not other defenses[24]—and, as well, the absence of circumstances which would mitigate the seriousness of the offense reducing it to manslaughter. Add that the term "malice aforethought" does not mean malice as used in ordinary speech,[25] and forethought is not required, and it becomes clear that it is well-nigh impossible to communicate to jurors in the arcane jargon of malice aforethought the mental state required. No doubt many jurors are confused, and many, in error but understandably, make up their own working definition out of their own appreciation of what malice aforethought "must" mean.

"The retention of 'malice' in the law of murder is a constant source of trouble and confusion. The word has long been a highly technical 'word of art' practically never used in its natural meaning and so ambiguous and indefinite that lawyers and judges themselves find difficulty in treading the mazes of its various meanings. It is no wonder that the average juryman is completely lost when he at-

[24] Coercion, mistake, insanity, among others, are possible defenses, but they would not necessarily negative malice aforethought taken to mean intent to kill, actual or implied, neither excused nor justified.

[25] Since "malice," as that word is used in ordinary speech, is not an issue, it is misleading to continue to speak to juries of ill will, corruption or malignancy of heart and depravity of the soul. It is, of course, arguable that where the issue is first-degree or second-degree murder, a court might describe one who premeditates and deliberates and decides to kill as being corrupt, malignant or depraved. But the issue is whether the actor deliberated or premeditated, not whether he was corrupt, malignant or depraved. Similarly, those words can be used to distinguish the "non-malignant" conduct of a person who accidentally kills his victim or who acted in self-defense or under circumstances of mitigation; however, again, the true issue would not be whether the actor was corrupt, malignant or depraved but whether he was justified in acting as he did in self-defense or whether it was an accident or there were circumstances of mitigation.

tempts, under the instructions ordinarily given, to make the distinction between malice in its ordinary sense and malice in law. Furthermore, there is no practical reason for the longer retention of the term. The various situations which constitute murder can be better enumerated in the statute in plain and unambiguous language and the present uncertainty removed." Moreland, Law of Homicide, pp 205, 206.[26]

The new penal codes,[27] in defining the crime of murder, eliminate the word "malice." Although Michigan has not remolded its penal code along these lines, a restatement of the common law need not wait upon legislative action. Murder is a common-law crime: "Neither murder nor manslaughter is defined by our statutes, and the definition of murder remains the same as at common law". 3 Gillespie, Michigan Criminal Law and Practice, § 1637, p 1969. If the language of the common law is mis-

---

[26] See Purver, The Language of Murder, 14 UCLA 1306, 1308.

[27] See New York Revised Penal Code, § 125.25 (murder is intentional killing or, under circumstances evincing a depraved indifference to human life, actor recklessly engages in conduct which creates great risk of death and causes death); Illinois Criminal Code, T. 38, § 9–1 (1961) (murder is killing with intent to kill or do great bodily harm, or where actor knows that such acts will cause death or he knows such acts create a strong probability of death or great bodily harm). Similarly, see Study Draft of a New Federal Criminal Code, § 1601 (1970) (murder is a killing intentionally or knowingly committed or death caused under circumstances manifesting extreme indifference to human life); Model Penal Code, § 210.2 (1962) (murder is a criminal homicide committed purposely or knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life); proposed Michigan Revised Criminal Code, §§ 2005, 2006 (1967).

It will be observed that the simplification in language has wrought no fundamental change in the elements of the crime of murder: matters of defense and mitigation are sometimes dealt with in other provisions.

The new formulations are also designed to meet other objections which have been advanced to the common law and Pennsylvania statutory grading definitions. See American Law Institute, Model Penal Code, Tentative Draft 9, § 201.2, p 28; Wechsler and Michael, A Rationale of the Law of Homicide, 37 Colum L Rev (Part I) 701, (Part II) 1261 (1937).

leading it should be clarified. It is the duty of the common-law courts to speak clearly in language that jurors can understand, not to persist in the lazy repetition of words which have lost all capacity to convey relevant thoughts and which are frequently misleading.

The problem of formulating suitable instructions on malice aforethought does not lend itself to ready solution.[28] Although the formulation of jury instructions is outside the scope of this opinion, defendants charged with murder will either deny that they killed the victim or direct their defense toward the proof of facts inconsistent with malice aforethought, claiming either that they did not intend to kill or, even if it is found that they did, that the homicide was justified, excusable, or committed under circumstances of mitigation.

In *People* v. *Dunn* (1925), 233 Mich 185, 197, the Supreme Court of Michigan observed:

"In practical application legal refinements of definition over which those learned in the law often differ are of scant aid to a jury.

" 'If the jurors are told what constitutes legal justification or excuse, and what circumstances will

[28] Perkins suggests a change in phraseology:
"Since murder cannot be adequately defined in terms of an intent to kill, without resort to the ancient fiction whereby such an intent was 'implied' in certain cases in which it did not exist in fact, some other phrase must be used. And since malice aforethought is neither a self-explanatory phrase, as used in the law, nor one which designates any single and invariable frame of mind, it is probably wise to employ a phrase to which a meaning may be assigned quite arbitrarily. The phrase 'man-endangering-state-of-mind' is suggested for this purpose with the assumption that it be arbitrarily understood to include every attitude of mind which includes (1) an intent to kill, or (2) an intent to inflict great bodily injury, or (3) an intent to do an act in wanton and wilful disregard of an unreasonable human risk (*i.e.*, the wilful doing of a wanton act under such circumstances that there is obviously a plain and strong likelihood that death or great bodily injury may result), or (4) an intent to perpetrate a dangerous felony." Perkins on Criminal Law (2d ed), p 46.

reduce the killing to manslaughter, they have all the law they need to determine whether the particular homicide is murder or not, without the mention of the word malice.'    13 RCL p 773."

Courts might well emphasize that juries can convict of murder only when they are convinced beyond a reasonable doubt that (1) the defendant intended (actually or impliedly) to kill and (2) circumstances of justification, excuse or mitigation do *not* exist. A judge could, for example, charge that the defendant is guilty of the crime of murder if the jurors find, beyond a reasonable doubt, that he killed the victim and that he actually intended to kill the victim or (where relevant), although he did not actually intend to kill, he actually intended to inflict great bodily harm or engaged in behavior the natural tendency of which is to cause death or great bodily harm, unless (where relevant) the jurors have a reasonable doubt whether (i) circumstances of mitigation are present, in which event the offense is reduced from murder to manslaughter, or (ii) the killing was accidental, or (iii) the defendant justifiably acted in self-defense.

We have addressed ourselves to this perplexing question in order to make clear the nature of the presumption of malice aforethought, to caution against misdirection of jurors regarding the "presumption", and to show why in the instant case there was adequate evidence to sustain a conviction of common-law, *i.e.*, second-degree, murder. The fact that Morrin killed his victim was not in dispute. From this fact, the jury was permitted to infer that the killing was committed with malice aforethought. Morrin's testimony concerning self-defense sought to nourish a reasonable doubt in the minds of the jurors as to the existence of this inferential fact. The jury, nevertheless, chose to draw the requisite

inference and exercised its prerogative to disbelieve Morrin's exculpatory testimony.

### III.

First-degree murder is a statutory offense. It is the common-law offense of murder (homicide committed with "malice aforethought") with an added element:

"All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery or burglary, shall be murder of the first degree, and shall be punished by solitary confinement at hard labor in the state prison for life." MCLA § 750.316 (Stat Ann 1954 Rev § 28.548).

We turn to the question of whether the people proved that the murder of William Abell was committed with deliberation and premeditation. The connotative similarities between the words "aforethought" and "premeditation" have confused many courts;[29] malice aforethought and premeditation are

---

[29] See Wechsler and Michael, A Rationale of the Law of Homicide, (Part I), 37 Colum L Rev 701, 707–709 (1937); Perkins on Criminal Law (2d ed), p 92.

It is easy to make an error in terminology even when the writer has no misunderstanding of the law. Such was probably the case in *People* v. *Lane* (1942), 304 Mich 29, 31, where the Court said that the "defendant was charged with murder of the first degree, involving the element of malice aforethought." It is true that any murder involves malice aforethought, but first-degree murder requires proof of deliberation and premeditation as well as malice aforethought. In *Nye* v. *People*, fn 11, *supra*, p 18, the Court said that "malice aforethought did not mean deliberate and calculating malice, but only malice existing at any time before the act so as to be its moving cause or concomitant" and that the statutory grading of murder into murder of the first degree and of the second degree did not change the "common-law qualities" of murder and "the division is chiefly between cases where the malice aforethought is deliberate and where it is not."

not, in legal terminology, synonymous.[30]   Malice aforethought is a term of art firmly rooted in the common law.[31]   Premeditation and deliberation are legislative offspring and are to be construed in the light of the statutory scheme.

At common law all murders were punishable by death.  The severity of this rule led Pennsylvania to enact, in 1794, the first statute dividing murder into degrees.[32]   The Pennsylvania statute defined first-degree murder as a killing committed willfully and with premeditation and deliberation and classified "all other kinds of murder" as second-degree murder.  Only first-degree murder was punishable by death.

Michigan adopted the Pennsylvania statute verbatim by 1838.[33]   At one time all but ten states had similar statutes.[34]

As noted above, the division of murder into degrees was prompted by a feeling that not all murders reflected the same quantum of culpability on the part of the wrongdoer.  Conviction of first-degree murder carries an automatic sentence of life imprisonment without possibility of parole, while second-degree murder is punishable by imprisonment for life or for any terms of years and the offender is parolable.

Decisions of the Michigan Supreme Court have, from the beginning, acknowledged that first-degree

---

[30] See *Ornelas* v. *United States* (CA9, 1956), 236 F2d 392; *Beardslee* v. *United States* (CA8, 1967), 387 F2d 280, 291.

[31] See fns 15 and 16.

[32] See Keedy, History of the Pennsylvania Statute Creating Degrees of Murder, 97 Pa L Rev 759 (1949); Perkins on Criminal Law (2d ed), p 88.

[33] RS 1838, part 4, T 1, ch 3, p 621; Rev Stat 1846, ch 153, § 1, p 658, now MCLA § 750.316 (Stat Ann 1954 Rev § 28.548).  The Pennsylvania origin of our statute is acknowledged and discussed in *People* v. *Potter*, fn 6, *supra*, p 6.

[34] See 1 Wharton's Criminal Law and Procedure, § 263, p 558. Modern statutes eliminate the grading of murder but preserve the distinction between murder and manslaughter; see fn 27.

murder is a "more atrocious" crime than its second-degree counterpart.[35]   In 1876, the Michigan Supreme Court observed:

"It was rightly considered that what is done against life deliberately indicates a much more depraved character and purpose than what is done hastily or without contrivance." *Nye* v. *People* (1876), 35 Mich 16, 19.

The clarity of the policy underlying the statutory division of murder into degrees contrasts sharply with the lack of precise standards for determining what constitutes premeditation and deliberation sufficient to establish first-degree murder.  Since premeditation and deliberation are all that distinguish first-degree from second-degree murder, imprecise definition of these elements tends to erode the distinction between the two offenses.

A number of jurisdictions have all but obliterated this distinction by observing the rule that premeditation and deliberation need precede the homicidal act only momentarily.[36]   (This is probably the result of the mistaken assumption that malice *aforethought* means with "premeditation" and the unthinking adoption of the cases which long before the statutory grading of murder into two degrees had held that premeditation was not required to establish malice aforethought.)[37]   The rule prevalent in those jurisdictions grants the jury an unstructured discretion to find premeditation and deliberation in any murder case.

Michigan adheres to a more meaningful standard.[38]   *Nye* v. *People, supra,* struck down a jury

[35] *People* v. *Potter,* fn 6, *supra,* p 7.

[36] *Hammil* v. *People* (1961), 145 Colo 577 (361 P2d 117); *Caldwell* v. *State* (1919), 203 Ala 412 (84 So 272); *Jackson* v. *State* (1918), 133 Ark 321 (202 SW 683).

[37] See authorities cited in fn 11.

[38] It should be emphasized that a number of jurisdictions, in ad-

instruction that a willful, deliberate design to take life "might be formed an instant before the act". The Court ruled that "it is a perversion of terms to apply the term deliberate to any act which is done on a sudden impulse". In *Nye* the homicide occurred in a sudden affray; the Supreme Court held that there was no testimony whatever upon which a verdict of murder in the first degree could properly have been rendered.

Aside from the language of *Nye,* the Michigan cases do not attempt to define premeditation and deliberation with any specificity. Lack of suitable definitions, however, has not prevented the Michigan Supreme Court from insisting upon strict observance of the premeditation-deliberation requirement. The Court has repeatedly reversed first-degree murder convictions in which the evidence did not support an inference of premeditation and deliberation.[39]

---

dition to Michigan, reject the notion that premeditation and deliberation and the killing may occur instantaneously. See *Austin* v. *United States,* fn 14, *supra; People* v. *Anderson* (1968), 70 Cal 2d 15 (73 Cal Rptr 550, 447 P2d 942); *State* v. *Esherick* (1969), 19 Ohio App 2d 40 (249 NE2d 78).

[39] *People v. Potter, supra,* fn 6; *Nye* v. *People,* fn 11, *supra; People* v. *Gordon* (1894), 100 Mich 518. And see fn 49 for cases where the Court reversed manslaughter and second-degree murder convictions where there was insufficient evidence to warrant submission of the first-degree murder issue to the jury.

The statement in *Potter* (p 9) that, "Malice aforethought is either express or implied, and there can be no case of murder in the first-degree [except felony murder] when there does not exist *express* malice; while, in case of murder in the second degree, the malice is generally, if not universally, *implied"* [emphasis by the Court], has been the source of some confusion. All the Court said was that in cases of first-degree murder there is generally actual intent to kill (express malice) while in second-degree murder frequently there is no actual intent to kill and, therefore, generally, if not universally, the intent to kill is implied. This cannot properly be read as meaning that proof of actual intent to kill (express malice) suffices to support a conviction of first-degree murder; the Court elsewhere recognized that the deliberation and premeditation elements (p 8) "must be affirmatively shown, and cannot be established by those ordinary legal inferences which were sufficient at the common law to establish the general crime, but at which the statute, by dividing the crime into degrees,

The real focus of first-degree murder jurisprudence in Michigan has been on the kind of evidence which permits an inference of premeditation and deliberation. To some extent this approach has minimized the need for functional definitions of premeditation and deliberation. Since the distinguishing elements of first-degree murder ultimately resolve themselves into questions of fact, minimum standards of proof, if reasonably related to the circumstances which must be proved, will serve to preserve the distinction between first-degree and second-degree murder.

Our concern with maintaining the distinction between degrees of murder reflects a growing insistence by many courts that first-degree and second-degree murder be clearly differentiated.[40] Such differentiation furthers the statutory objectives, of course. Yet it serves a more fundamental purpose by insuring that murder prosecutions do not violate fundamental due process.

First-degree and second-degree murder are separate offenses, carrying vastly different penalties, distinguished only by the requirement that a homicide punishable as first-degree murder be committed with premeditation and deliberation. If premeditation and deliberation are ill-defined, the jury is

especially aimed." The Court's ruling reversing the conviction of first-degree murder because of the failure of the trial court to charge that the people must prove (p 3) "such facts in addition to the act of killing as made the killing murder of the first degree" emphasizes that the Court required proof of more than malice aforethought, even if it was express in the sense of being actual intent to kill.

40 *Austin* v. *United States*, fn 14, *supra; People* v. *Anderson*, fn 38, *supra; State* v. *Esherick*, fn 38, *supra; Herhal* v. *State* (Del, 1968), 243 A2d 703; *People* v. *Hopper* (1956), 145 Cal App 2d 180 (302 P2d 94); *People* v. *Goedecke* (1967), 65 Cal 2d 850 (56 Cal Rptr 625, 423 P2d 777); *People* v. *Hillman* (1956), 140 Cal App 2d 902 (295 P2d 939); *State* v. *Cosby* (1955), 100 Ohio App 459 (137 NE2d 282); *People* v. *Price* (CA3, 1950), 181 F2d 394; *Driggers* v. *State* (Fla, 1964), 164 So 2d 200; *Simmons* v. *State* (1957), 227 Ark 1109 (305 SW2d 119).

left with no objective standards upon which to base its verdict. Convictions of the two offenses will be distributed not on the basis of ascertainable criteria, but entirely as products of the subjective, wholly individualistic determinations of different juries.

The United States Supreme Court has frequently ruled that juries cannot be permitted to determine criminal liability without a reasonably ascertainable standard of guilt.[41] Absent such standards, the jury has the sort of naked and arbitrary power[42] which is inconsistent with due process.

Accordingly, it underscores the difference between the statutory degrees of murder to emphasize that premeditation and deliberation must be given independent meaning in a prosecution for first-degree murder. The ordinary meaning of the terms will suffice. To premeditate is to think about beforehand;[43] to deliberate is to measure and evaluate the major facets of a choice or problem.[44] As a number of courts have pointed out, premeditation and deliberation characterize a thought process un-

---

[41] See, for example, *Herndon* v. *Lowry* (1937), 301 US 242, 263, 264 (57 S Ct 732, 81 L Ed 1066) (a jury cannot be "licensed" to "create its own standard in each case"; a "reasonably ascertainable standard of guilt" should be prescribed in the statute); *Giaccio* v. *Pennsylvania* (1966), 382 US 399, 402, 403 (86 S Ct 518, 15 L Ed 2d 447) ("a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each pertinent case").

[42] *Yick Wo* v. *Hopkins* (1886), 118 US 356 (6 S Ct 1064, 30 L Ed 220). *Cf. Thompson* v. *City of Louisville* (1960), 362 US 199 (80 S Ct 624, 4 L Ed 2d 654); *Johnson* v. *Florida* (1968), 391 US 596 (88 S Ct 1713, 20 L Ed 2d 838), holding that a conviction without evidence of an essential ingredient of the crime is a denial of due process.

[43] *State* v. *Faust* (1961), 254 NC 101, 106 (118 SE2d 769, 772).

[44] *Simmerman* v. *State* (1883), 14 Neb 568 (17 NW 115); *People* v. *Richards* (1905), 1 Cal App 566 (82 P 691); *People* v. *Thomas* (1945), 25 Cal 2d 880, 898 (156 P2d 7, 17).

disturbed by hot blood.[45]  While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a "second look".[46] ((

This interpretation of premeditation and deliberation in no way departs from existing Michigan law.  Time and again the Michigan Supreme Court

---

[45] *Austin* v. *United States,* fn 14, *supra; People* v. *Anderson,* fn 38, *supra; State* v. *Brown* (1958), 249 NC 271 (106 SE2d 232); *State* v. *Mitchell* (Mo, 1966), (408 SW2d 39).

[46] *Austin* v. *United States,* fn 14, *supra,* p 135; *People* v. *Guadagnino* (1922), 233 NY 344 (135 NE 594); *State* v. *Clayton* (1912), 83 NJ 673 (85 A 173); *State* v. *Faust,* fn 43, *supra.*

Perkins sums up:

"An additional requirement of this particular clause [willful, deliberate and premeditated] is that this intent be formed by a mind free from undue excitement. 'Deliberation means that the act is done in a cool state of blood.'

" * * * 'Premeditation means "thought of beforehand" for some length of time, however short.' * * * The notion that a fully-formed intent is always deliberate and premeditated, no matter how short the time between the first thought of the matter and the execution of the plan, is preposterous. * * *

"The sound interpretation of such a statute is that a killing is deliberate and premeditated if, and only if, it results from real and substantial reflection. It is not sufficient that the idea be fully formed and acted upon; it must be pondered over and weighed in the mind. The intent to kill must be turned over in the mind and given a 'second thought'. It is true the law does not attempt to set a period of time for this requirement in terms of hours, or minutes or even seconds; but premeditation takes 'some appreciable time'. * * *

"[T]here are three basic requirements for murder in the first degree, in addition to the requirement that the homicide must be murder within the rules of the common law. The first of these is that the homicide be intentional; the second is that the intent to kill must be formed by a mind that is cool rather than one that is unreasonably inflamed or excited; and the third is that the thought of taking the victim's life must have been reflected upon for some appreciable length of time *before* it was carried into effect, although not necessarily *after* the fatal decision was made. Needless to add, deliberation, premeditation and malice may all be inferred from sufficiently probative facts and circumstances." Perkins on Criminal Law (2d ed), pp 91–93. (Emphasis by author.)

The opinions of the United States Court of Appeals for the District of Columbia in *Austin* v. *United States,* fn 14, *supra,* and of the Supreme Court of California in *People* v. *Anderson,* fn 39, *supra,* are particularly instructive.

has reversed convictions where the evidence of premeditation and deliberation was insufficient to warrant submission of a charge of first-degree murder to the jury. In each case, the homicide occurred during an affray whose nature would not permit cool and orderly reflection.[47]

To decide whether Morrin's conviction may stand in the case before us, we must determine if the prosecution met its burden of proving premeditation and deliberation. Since these are subjective factors, usually incapable of direct proof, they may be established by inference from all the facts of the case.[48] The question is whether the evidence introduced at the trial fairly supports an inference of premeditation and deliberation.

There is abundant case law on the kinds of evidence from which premeditation and deliberation may be inferred.[49] Having examined the law we conclude that here there was insufficient evidence to support the requisite inference. Here there was no prior relationship between the parties that would tend to show a motive.[50] The murder weapon was not acquired or positioned in preparation for homi-

[47] *People* v. *Potter,* fn 6, *supra* (sudden altercation between two men who had been drinking together); *Nye* v. *People,* fn 11, *supra* (homicide occurred during a sudden affray); *People* v. *Gordon* (1894), 100 Mich 518 (father accidentally killed his own child while attempting to shoot a third party); *People* v. *Marshall* (1962), 366 Mich 498 (prostitute killed an attacker who assaulted her without warning); *People* v. *Hansen* (1962), 368 Mich 344, 352 (man shot an intruder whom he thought was menacing his family; "He did not have time to stop and think calmly as to the proper course to follow").

[48] *People* v. *Wolf* (1893), 95 Mich 625.

[49] *People* v. *Wolf,* fn 48, *supra; People* v. *Vinunzo* (1920), 212 Mich 472; *People* v. *Bauman* (1952), 332 Mich 198; *People* v. *Collins* (1921), 216 Mich 541; *People* v. *Milhem* (1957), 350 Mich 497. See, also, *People* v. *Anderson,* fn 38, *supra,* and *Austin* v. *United States,* fn 14, *supra,* for comprehensive analyses of the types of evidence which will support inferences of premeditation and deliberation.

[50] Thus distinguishing this case from *People* v. *Wolf,* fn 48, *supra; People* v. *Jackzo* (1919), 206 Mich 183; *People* v. *Dunn* (1925), 233 Mich 185.

cide.[51]   There is nothing in the record which would support an inference that Morrin transported Abell to the secluded location for an illicit or criminal purpose.   The circumstances of the killing itself and the events preceding it were equivocal, as consistent with the absence as with the presence of premeditation and deliberation.[52]   Morrin's conduct subsequent to the assault, while it perhaps reflected consciousness of guilt, was neither coherent nor organized enough to suggest it occupied a place in a scheme or plan deliberated and premeditated upon before the homicide.[53]

Morrin's exculpatory testimony, although disbelieved by the jury, was not substantive evidence of facts inconsistent with his account.[54]

---

[51] Thus distinguishing this case from *People* v. *Bauman*, fn 49, *supra; People* v. *Younger* (1968), 380 Mich 678; *People* v. *Holmes* (1896), 111 Mich 364; and *People* v. *Milhem*, fn 49, *supra*.  In each case defendant's orderly positioning of a deadly weapon supported a finding of deliberation.

[52] Circumstantial evidence which is as consistent with the innocence as with the guilt of an accused person does not support a conviction. *People* v. *Spann* (1966), 3 Mich App 444, 454.

[53] Flight proves only consciousness of guilt, not premeditation and deliberation.   *State* v. *Foster* (1902), 130 NC 666 (41 SE 284); *Austin* v. *United States*, fn 14, *supra*, p 140.   *Cf. People* v. *Anderson*, fn 38, *supra; People* v. *Cismadija* (1911), 167 Mich 210, 215.

[54] "The mere disbelief of a witness' testimony cannot serve to fill an evidentiary gap in the case; it will not justify a conclusion that the opposite of the witness' testimony is true in the absence of any independent evidence affirmatively supporting that conclusion." *People* v. *Matthews* (1969), 17 Mich App 48, 53, 54, fn 5, citing *Nishikawa* v. *Dulles* (1958), 356 US 129, 137 (78 S Ct 612, 2 L Ed 2d 659, 665); *Moore* v. *Chesapeake & O. R. Co.* (1951), 340 US 573, 576 (71 S Ct 428, 95 L Ed 547).

A hasty reading of *People* v. *Wolf*, fn 49, *supra*, and *People* v. *Vinunzo*, fn 51, *supra*, might suggest that the improbability of a defendant's description of the homicide, or alibi, is substantive evidence of premeditation and deliberation.   In fact, however, these cases merely declare that the improbability of the defendant's story might impair his credibility thus casting greater weight on the prosecution's affirmative evidence of premeditation and deliberation.

In *Wolf* there was evidence that the defendant killed the victim to steal his money.   In *Vinunzo* the record shows that the jury could have properly concluded from the defendant's testimony that he did not ordinarily carry a gun and, from the testimony of other witnesses, that he had a gun in his hand when the victim was killed.

The bizarre rectal wound, which the prosecution contended had great evidentiary weight, likewise permits no inference of premeditation or deliberation before the homicide,[55] particularly if, as the prosecution argued, that injury was inflicted after Abell was already dead. The infliction of a brutal or revolting wound is hardly consistent with, let alone evidence of, rational deliberative processes.[56]

There is language in some early cases which suggests that a killing with a deadly weapon gives rise to a presumption—or at least permits an inference—that the homicide was premeditated.[57] In each of these cases, however, there was ample additional evidence of premeditation.

Where the use of a deadly weapon has been held to evidence premeditation there were other circumstances showing motive or plan which would make reasonable the inference that the use of the deadly weapon was not a spur-of-the-moment decision, but rather that it was acquired or positioned with the thought beforehand of using it to kill the victim.[58] In the Michigan case of *Nye* v. *People, supra,* where

---

[55] "It is well established that the brutality of a killing cannot in itself support a finding that the killer acted with premeditation and deliberation." *People* v. *Anderson,* fn 38, *supra,* p 24.

"The violence and multiple wounds, while more than ample to show an intent to kill, cannot standing alone, support an inference of a calmly calculated plan to kill requisite for premeditation and deliberation." *Austin* v. *United States,* fn 14, *supra,* p 139.

Similarly, see *People* v. *Goedecke,* fn 40, *supra.*

[56] *People* v. *Anderson,* fn 38, *supra; Austin* v. *United States,* fn 14, *supra.*

[57] *People* v. *Potter,* fn 6, *supra; People* v. *Wolf,* fn 49, *supra; People* v. *Jackzo,* fn 50, *supra; People* v. *Statkiewicz* (1929), 247 Mich 260.

[58] *People* v. *Wolf,* fn 49, *supra; People* v. *Jackzo,* fn 50, *supra; People* v. *Statkiewicz,* fn 57, *supra; People* v. *Holmes* (1896), 111 Mich 364; *People* v. *Case* (1967), 7 Mich App 217, 226, all involve factors other than the mere fact of killing. In other words, these cases reflect the uncontroversial view that a killing with a deadly weapon may permit an inference of premeditation and deliberation if other attendant circumstances (motive, lying in wait, plan) also support the inference as well. In *People* v. *Vinunzo,* fn 49, *supra,* the Court said that a correct summary of the law is as follows:

the homicide occurred in a sudden affray and the defendant killed the victim with a knife "which he had in his pocket and which was apparently one calculated to be used as a weapon", the absence of any testimony whatsoever to show that the killing was not a sudden impulse prompted the Court to rule that there was insufficient evidence to support a verdict of first-degree murder.

Here there is no evidence that Morrin murdered William Abell with premeditation and deliberation. There is no evidence showing that Morrin acquired or positioned the tongs—an apparently impromptu weapon—with the thought beforehand to kill Abell or that he acted after a deliberate thought process. The record, and the reasonable inferences that might be drawn from it, fail to disclose any factual basis for finding premeditation and deliberation. The issue of first-degree murder should not have been submitted to the jury.

## IV.

Morrin raises several other exceptions to the trial proceedings.

First, he contends that the prosecuting attorney should not have asked him on cross-examination whether he had told his sister that he had rammed

---

"The use of a lethal weapon is not in itself sufficient evidence to warrant a verdict of murder in the first degree but in addition to this there must be evidence in the case, as to circumstances surrounding the killing or the manner in which the weapon is used, from which a logical inference may be drawn that there was willfulness, deliberation and premeditation."

The statements in *People* v. *Potter*, fn 6, *supra*, as to the means of proving "the intent" are dictum; the issue in that case was whether there was instructional error, not whether there was sufficient evidence to show deliberation and premeditation. It is well established that the use of a lethal weapon will support an inference of actual intent to kill and, hence (to use the term used by the *Potter* Court), of "express malice". *Wellar* v. *People* (1874), 30 Mich 16; *People* v. *Collins* (1911), 166 Mich 4; Moreland, Law of Homicide, p 24.

the tongs into Abell's rectum after he was already dead. (Morrin denied making the alleged statement.) He argues that since his sister did not so testify when she was examined that the prosecutor was seeking to place before the jury false innuendo. Although his sister did not testify at the trial that Morrin made such a statement, she did so testify at the preliminary examination. The question was, therefore, proper cross-examination, not impermissible innuendo.

Morrin also claims that the prosecutor misrepresented the content of certain testimony during his closing argument. Misrepresentation did take place, and we disapprove of the prosecutor's overzealous efforts to emphasize the rectal wound. No objection or motion for a corrective instruction or mistrial was made by defense counsel, however, and therefore the issue is not preserved for review.[59]

Morrin further claims that the trial judge erred when he permitted the jurors to read a portion of the transcript after they had been deliberating for seven hours. The permission was granted following a request by the jurors to see testimony of Dr. Valdez, who performed the autopsy, concerning the rectal wound. All relevant testimony of Dr. Valdez was read. The applicable rule is that "to read or permit to be read testimonial excerpts is an exercise of judicial discretion. It is reviewable * * * and reversible only if there was an abuse of discretion".[60] We find no abuse here.

Morrin also objects to the admission into evidence of a photograph depicting Abell's wounds. He contends it was inadmissible because the body had

---

[59] *Koepel* v. *St. Joseph's Hospital* (1968), 381 Mich 440; *People* v. *Hider* (1968), 12 Mich App 526.

[60] *People* v. *Walker* (1963), 371 Mich 599, 610; *Rumptz* v. *Leahey* (1970), 26 Mich App 438, 443.

been removed to the morgue before the picture was taken.  The general rule is that photographs of the victim may be introduced into evidence if they accurately depict what they represent and are helpful in throwing light on a material issue.[61]  The movement of the body did not in this case diminish the accuracy or materiality of the photograph which displayed only a portion of the body, not the place where the picture was taken.  The photograph, though not pleasant, was not gruesome.

Finally, Morrin objects to a ruling that one of his character witnesses was not qualified to testify concerning Morrin's reputation in the community.  The testimony of a character witness must be based upon what he has heard other people in the defendant's residential or business community say about the defendant's reputation.[62]  The record discloses that the witness had no basis for his testimony concerning Morrin's reputation.  The ruling does not require reversal.

## V.

Having determined that the trial judge erred only by submitting the issue of first-degree murder to the jury, we turn to the disposition of this case.  The jury's verdict was an unequivocal assertion of its finding that Morrin did in fact murder William Abell.  Its mistaken belief that the record permitted an inference of premeditation and deliberation does not detract from the fact that there was credible evidence to support a finding of second-degree murder.

In other first-degree murder cases, where juries have returned guilty verdicts upon evidence suf-

---

[61] *People* v. *Becker* (1942), 300 Mich 562; *People* v. *Freeman* (1965), 1 Mich App 63; *People* v. *Jenkins* (1968), 10 Mich App 257.
[62] *People* v. *Schultz* (1946), 316 Mich 106; *People* v. *Kronk* (1950), 326 Mich 744.

ficient only to prove the less aggravated second-degree crime, appellate courts have remanded for the entry of judgments of conviction of the lesser offense.[63] This is, of course, permissible *only* where the accused person is convicted of the charged offense and it is, therefore, apparent that the verdict is not the product of compromise.[64]

We remand this cause to the trial court for entry of a judgment convicting Morrin of second-degree murder, and for resentencing on that conviction.

All concurred.

---

[63] See *Austin* v. *United States*, fn 14, *supra; People* v. *Anderson*, fn 38, *supra; State* v. *Braley* (1960), 224 Or 1 (355 P2d 467); *Forsha* v. *State* (1946), 183 Tenn 604 (194 SW2d 463); *State* v. *Porello* (1941), 138 Ohio St 239 (34 NE2d 198); *State* v. *Cosby*, fn 40, *supra; State* v. *Jackson* (1936), 198 Minn 111 (268 NW 924). Similarly, see *People* v. *Lee* (1968), 14 Mich App 328.  *Cf. People* v. *Monaco* (1964), 14 NY2d 43 (248 NYS2d 41).

[64] Where the defendant is convicted of a lesser offense, the possibility of compromise cannot be excluded.  *Cf. People* v. *Marshall*, fn 47, *supra,* and *People* v. *Hansen*, fn 47, *supra,* where the issue of first-degree murder was submitted to the jury upon insufficient evidence, although the convictions were of lesser offenses and where the Supreme Court, therefore, reversed and remanded for new trials.

In *Nye* v. *People,* fn 11, *supra,* where a new trial was ordered in a case where the defendant was convicted of first-degree murder on insufficient evidence of premeditation and deliberation, there was other error in addition to the insufficiency in the evidence; similarly, *Herhal* v. *State,* fn 40, *supra.*